Thomas F. RIDER

v.

SPRAGUE STEAMSHIP COMPANY.

Civ. A. No. 55–685.

United States District Court
D. Massachusetts.

March 27, 1957.

Dorothy Kelleher Meehan, Boston, Mass., for plaintiff.

Thomas H. Walsh, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action under the Jones Act, 46 U.S.C.A. § 688, for injuries suffered by the plaintiff, a second assistant engineer. He is 61 years old, and has followed the sea since 1921. On December 11, 1952 he was working aboard defendant's collier Penobscot with the chief engineer. He carried a blower below weighing about 50 pounds, and thereafter complained of a pain in his back. For a week after this he stood watches, but did no physical labor. On December 17th he told the chief he felt all right to work again and they resumed operations on the blowers. The next day one blower, upon being reconnected to the pipe, came about an inch out of line, requiring the pipe to be moved, or turned in the thread. The chief asked the plaintiff to push it. The plaintiff braced his back against a rail, pushed with his foot, and felt something let go in his back. It is for this injury that he has recovered a verdict. The defendant moves for judgment n. o. v. This raises two issues.

On the question of liability the plaintiff testified that it would have been more appropriate to use a "spot" wrench than his foot, but that this wrench was locked up. The operation or action that the plaintiff undertook, instead, would seem to me, in the ordinary course, to have been a proper alternative, at least until it appeared that the pipe was badly stuck. Pushing a pipe into line must be an everyday occurrence. However, this was possibly not the ordinary course, the plaintiff having had recent trouble with his back. Plaintiff testified that he did not recall the chief telling him to use his foot, but the chief admitted that he did. I will not say there was no evidence whatever of negligence.

The Penobscot reached Newport News on December 23. The plaintiff asked for a hospital slip, and was paid off, receiving some $700. He took a bus to Norfolk where he spent the night, then took the overnight boat to Baltimore, which city he regarded as his home. On December 27 he went to the Marine Hospital at Baltimore, where he was given diathermic treatments at the out-patient department daily for about a week. He was then given a slip to the effect that he would not be ready for duty for 30 days and told to come back for further treatments if needed. He did not return. Thereafter he applied to the defendant "for maintenance and cure" and was referred to defendant's Baltimore counsel. He testified he asked counsel for $1,000, which he said was to include estimated lost wages as well as strict maintenance. At his request counsel gave him $50 on account. He subsequently told him the defendant would pay him only $650. The plaintiff demurred at first, but thereafter consulted with his union representative, and finally agreed to defendant's figure. On January 24, 1953 he signed a release, which was full, clear, complete and specific. He testified that before signing counsel read it to him. The plaintiff was

a man of maturity and experience. It could not be found on the evidence that he did not understand fully the effect of what he was doing.

■ On the question of whether plaintiff is bound by his release, however, commonly several further matters are involved. One of these is whether there was any mistake about his physical condition. It could not be found that there was here any mistake of substance. While the plaintiff testified that he is still occasionally troubled by his back, he returned to work on March 6, 1953, and has been working ever since. He has not seen a doctor since January 7, 1953, except once in connection with preparation for trial, and has not received or sought any care or treatment. The hospital report, which he had in his possession at the time of the release, fully described the nature of his injury. His doctor at the trial testified that part of his difficulties could be traced to the injury of December 11, and to arthritis, for both of which defendant was not responsible. Nor am I satisfied that the release could be found to have been obtained by economic duress.

■■ From the standpoint of maintenance and cure the settlement was entirely adequate. No "cure" was called for. Maintenance in the union contract was $8 a day, which would have meant 81 days, or slightly longer than the total time plaintiff in fact was out of work. I believe the actual date of his return was later than his ability, there having been some problem about getting a berth. On the other hand, if there was a substantial question of liability under the Jones Act, it could be found that the settlement was for an inadequate amount. In this respect I must consider the fact that plaintiff had no counsel, and was advised by defendant's that in his opinion, on the facts stated, he "couldn't quite see liability." Since I have held that on the evidence a jury might find liability, the question at once arises as to whether this statement, even though honest, constituted a misrepresentation.

On the basis of what plaintiff told counsel I think his opinion was not only honest, but accurate. Although plaintiff gave a lengthy statement, he said nothing about the absence of any wrench, and the chief's order to use his foot, without which factors I believe liability could not be found.[1] While it might be said that plaintiff fully knew these facts, and himself failed to give defendant's counsel the information to go on, in seamen's cases the risk is defendant's. Thompson v. Coastal Oil Co., D.C.D.N.J., 119 F.Supp. 838, reversed 3 Cir., 221 F. 2d 559, reversed 352 U.S. 862, 77 S.Ct. 90, 1 L.Ed.2d 73. The seaman, unassisted by his own counsel, is not to be charged with knowledge of what is legally material and what is not. The motion for judgment n. o. v. is denied.

■ The defendant has also moved for a new trial on the ground that the verdict was against the great weight of the evidence. So far as the release is concerned, I do not so regard it. On liability I view the case as very thin. Furthermore, inasmuch as liability in my opinion is predicated upon the condition of plaintiff's back, no one knew of that condition better than plaintiff himself. He was an experienced seaman in a responsible position. There was no suggestion that he demurred about doing what the chief requested, or that he had to do it. He was doing voluntary overtime, and the chief had told him, in effect, not to do anything until he felt up to it. So far as appears the plaintiff could easily have spoken up and asked for a wrench, or for the chief to do it, as had been done with carrying the blowers. I could not contemplate a finding that plaintiff was any less negligent than defendant. Cf. Forbes v. Jenney Manufacturing Co., D.C.D.Mass., 125 F. Supp. 679.

■ Even had there been no contributory negligence, the jury's finding

---

1. In fact he said to the contrary, "I am not attaching any blame for my injury to the ship."

of $7,500 on the Jones Act count would seem to me excessive. Giving due regard to contributory negligence, it is exorbitant. The verdict and the judgment entered thereon are set aside and a new trial ordered. Because of the interdependence of negligence and contributory negligence, and the necessity that both be passed upon, and the weakness of plaintiff's case on liability, the new trial is to be on all issues except that of the release.